J-S47029-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MAURICE JOHNSON | |
| Appellant | No. 3677 EDA 2016 |

Appeal from the Judgment of Sentence March 13, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001854-2014

BEFORE:  LAZARUS, J., MOULTON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MOULTON, J.:              **FILED SEPTEMBER 28, 2017**

Maurice Johnson appeals from the March 13, 2015 judgment of sentence entered in the Philadelphia County Court of Common Pleas following his convictions for persons not to possess firearms, carrying a firearm without a license, and carrying a firearm on the public streets or public property in Philadelphia.[1]  We affirm.

The trial court set forth the following factual history:

> At approximately 4:15 p.m. on February 2, 2014, [Philadelphia] Police Officers [Chad] Gugger and [George] Fox observed a black Pontiac automobile travelling at a high rate of speed on the 4800 block of North 11th Street in Philadelphia.  While attempting to catch up to the vehicle, the officers ran the tag through the NCIC computer revealing that the auto's registration had expired five months earlier, in September of 2013.  The officers

_____

[1] 18 Pa.C.S. §§ 6105(a)(1), 6106(a)(1), and 6108, respectively.

activated their patrol car's lights and sirens and approximately three blocks later pulled [Johnson]'s vehicle over in the 1000 block of Rockland Street. Officer Gugger, with ten years' experience on the force and four and one-half years in the area of the traffic stop, testified that the area was a ["]bad area with lots of major crimes, homicides, robberies, guns, [and] drugs.[" He] stated that in a normal duty shift, the officers would receive at least two calls for gun violence. [] Johnson, the sole occupant of the stopped vehicle, gave police his license and registration, but not an insurance card when requested. The office[r]s checked [Johnson]'s history and[, after seeing from prison records that Johnson had] a history of gun violence, asked Johnson if he had any weapons in the vehicle. [Johnson] did not answer that question, but got nervous, started shaking, breathing heavier and told the officers that he was on state parole. The patrolmen then asked [Johnson] to exit his vehicle and sit in the patrol car while the parking authority was notified as they were "live-stopping" the vehicle. [Johnson] was not under arrest, however two citations were issued for driving an unregistered vehicle in violation of 75 Pa.C.S. §[]1301(a) and for an invalid inspection in violation of 75 Pa.C.S. §[]4706(c)(1). When the parking authority tow truck arrived on the scene, Officer Fox performed an inventory of the vehicle, finding a black Smith & Wesson [.]32 [caliber] revolver with one live round in the glove box. [Johnson] was then arrested and transported to the police district headquarters. [Johnson]'s mother testified on Johnson's behalf that she was the owner of the Pontiac and, that in addition to her and [Johnson] being authorized to use the vehicle, her daughter and son-in-law were allowed to use the Pontiac, but that no one had used it that day.

Opinion, 1/4/17, at 2-4 ("1925(a) Op.").

On March 12, 2014, Johnson filed a motion to quash and to suppress the firearm. On April 16, 2014, the trial court denied the motion to quash. The trial court held hearings on the motion to suppress on July 21, 2014 and January 16, 2015. On January 16, 2015, the trial court denied the motion to

suppress and proceeded to a non-jury trial, incorporating the testimony from the suppression hearing. The trial court convicted Johnson of the aforementioned offenses. On March 3, 2015, the trial court sentenced Johnson to an aggregate sentence of five to ten years' incarceration followed by three years' probation.

On March 14, 2016, Johnson filed a timely Post Conviction Relief Act ("PCRA") petition seeking reinstatement of his appellate rights *nunc pro tunc*. On November 10, 2016, the PCRA court granted the petition and reinstated Johnson's appellate rights *nunc pro tunc*. On November 22, 2016, Johnson timely filed a notice of appeal.

Johnson raises two issues on appeal:

1. Did the trial court err when it admitted evidence of the gun found in the glove box?

2. Does sufficient evidence support the trial court's findings that [Johnson] possessed or controlled the gun in the glove box?

Johnson's Br. at 6.

First, Johnson argues that the trial court erred by not suppressing the gun recovered from the vehicle. According to Johnson, the officers illegally inventoried the car because there was no justification to tow and store the vehicle, as the vehicle was not a public safety hazard. Johnson therefore asserts that the trial court should have suppressed the gun found in the glove box incident to that illegal inventory search. The Commonwealth

responds that Johnson has waived this argument because he did not present it to the trial court in his suppression motion or at the suppression hearing.

We agree with the Commonwealth. It is well settled that "when a defendant raises a suppression claim to the trial court and supports that claim with a particular argument or arguments, the defendant cannot then raise for the first time on appeal different arguments supporting suppression." **Commonwealth v. Thur**, 906 A.2d 552, 566 (Pa.Super. 2006); **see** Pa.R.A.P. 302(a). Johnson's claim regarding the illegal inventory search was not included in his motion to suppress, nor did he argue it at the suppression hearing. Rather, Johnson argued that the officers lacked probable cause to search the vehicle and that the officers did not follow the Live Stop[2] protocol. **See** N.T., 1/15/16, at 17-20. Accordingly, we conclude that Johnson has waived this argument on appeal.[3]

---

[2] "The City of Philadelphia's 'Live Stop' program involves the immediate immobilization in place or towing at a different location of vehicles found to be operat[ed] in violation of certain state motor vehicle statutes." **Commonwealth v. Thompson**, 999 A.2d 616, 617 n.1 (Pa.Super. 2010) (internal quotation omitted, alteration in original), *disapproved of on other grounds by* **Commonwealth v. Lagenella**, 83 A.3d 94 (Pa. 2013).

[3] In his brief, Johnson supports his claim by arguing that the Commonwealth presented no evidence that the car posed a risk to public safety and, as a result, an inventory search pursuant to the Live Stop protocol was illegal. Johnson's Br. at 10. Any failure to present such evidence, however, was undoubtedly the product of Johnson's failure to raise this argument in his motion to suppress. Because the Commonwealth cannot be expected to respond to non-existent claims, a finding of waiver here is particularly appropriate.

Next, Johnson argues that the Commonwealth's evidence was insufficient to support his convictions. This Court's standard for reviewing a sufficiency of the evidence claim is as follows:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact[-]finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Rodriguez*, 141 A.3d 523, 525 (Pa.Super. 2016) (quoting *Commonwealth v. Tarrach*, 42 A.3d 342, 345 (Pa.Super. 2012)).

Johnson argues that the Commonwealth failed to prove that he constructively possessed the firearm. According to Johnson, the Commonwealth only presented evidence that the firearm was in the glove box of a car he borrowed and that Johnson "became nervous when asked if there were any weapons in the car and he only answered that question by stating he was on state parole." Johnson's Br. at 11. This claim does not merit relief.

- 5 -

The doctrine of constructive possession

> is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa.Super. 2013) (quoting

*Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa.Super. 2012)).

Viewing the evidence in the light most favorable to the Commonwealth, we conclude that the Commonwealth presented sufficient evidence to prove that Johnson constructively possessed the firearm. The evidence showed that Johnson was the only person in the vehicle and could access a firearm located in the glove box using the key to that vehicle. *See, e.g., Commonwealth v. West*, 937 A.2d 516, 524 (Pa.Super. 2007) (concluding that appellant constructively possessed cocaine found in motorcycle compartment when officer had seen appellant riding motorcycle approximately one hour before the vehicle was seized and appellant was moving toward motorcycle when arrested). Further, when asked whether he had any weapons in the vehicle, Johnson not only refused to answer the question, but also showed consciousness of guilt by shaking nervously, breathing heavily, and stating that he was on state parole. *See Commonwealth v. Hughes*, 865 A.2d 761, 792 (Pa. 2004) ("The conduct

of an accused following a crime, including 'manifestations of mental distress,' is admissible as tending to show guilt."). Under these circumstances, we agree with the trial court that the evidence was sufficient to establish beyond a reasonable doubt that Johnson had the power to control the firearm and the intent to exercise that control and, therefore, Johnson had conscious dominion over the firearm.

Judgment of sentence affirmed.

*Judgment Entered.*

_____

*Joseph D. Seletyn, Esq.*
*Prothonotary*


Date: *9/28/2017*